UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ORIX FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:09-CV-88 |
| v. | ) | *Lee* |
| | ) | |
| MARY E. ARMS and | ) | |
| CHARLES E. ARMS, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Plaintiff ORIX Financial Services, Inc. ("Plaintiff") filed this diversity action seeking relief under the Tennessee Uniform Fraudulent Transfer Act, Tenn. Code Ann. §§ 66-3-301 to -325. Plaintiff alleges that Defendant Mary E. Arms ("Mrs. Arms") fraudulently conveyed property that she owned individually to herself and her husband, Defendant Charles E. Arms ("Mr. Arms"), as tenants by the entireties. Plaintiff seeks a judgment setting aside the conveyance as void.

The Court held a bench trial on December 9, 2009, during which the parties' attorneys were present but the parties themselves were not. No objections were raised to the absence of any opposing party. Plaintiff offered several exhibits, including the deposition testimony of both Defendants, all of which were admitted without objection. Defendants presented no evidence and waived argument, specifically waiving any objection to Plaintiff's proposed findings of fact and conclusions of law. Pursuant to Fed. R. Civ. P. 52(a)(1), the Court issues its findings of fact and conclusions of law, supporting a judgment for Plaintiff.

**I.    FINDINGS OF FACT**

1. Plaintiff is a New York corporation with its headquarters located in Kennesaw, Georgia.

2. Mrs. Arms is an adult resident citizen of Cocke County, Tennessee and was married to Mr. Arms at all relevant times.

3. Mr. Arms is also an adult resident citizen of Cocke County, Tennessee and was married to Mrs. Arms at all relevant times.

4. Title to certain real property (the "Realty") located at 385 Gardenia Road, Newport, Cocke County, Tennessee 37821, was vested in Mrs. Arms individually by virtue of a deed ("Deed") dated November 17, 1983, and duly recorded in the Register's Office for Cocke County, Tennessee. According to the legal description in the Deed, the Realty is:

    > SITUATE[D] in the Fourth Civil District of Cocke County, Tennessee, and more particularly bounded and described as follows:
    >
    > ROUNDED on the north, east, west and south by the lands of W. A. O'Neil, deceased, and perhaps others, and also on the east by the lands of W. W. Jones, containing sixteen (16) acres, more or less, and being the homeplace of Jesse O'Neil, deceased.
    >
    > BEING the same real estate conveyed to Charles Eddie Arms by deed of Edith Fine dated April 5, 1969 and of record in the Register's Office for Cocke County, Tennessee in Deed Book 115, Page 1.

5. The Realty has a fair market value of $125,000.

6. On November 16, 2007, Plaintiff was awarded summary judgment (the "New York Judgment") against Mrs. Arms in Case No. 604296/06 by the Supreme Court of the State of New York, County of New York, in the amount of $81,355.59.

7. Plaintiff subsequently filed suit in the Chancery Court of Cocke County, Tennessee ("Chancery Court"), seeking domestication of the New York Judgment. On or about May 5, 2008, Plaintiff moved for summary judgment on its request that the Chancery Court enter an order enrolling and domesticating the New York Judgment as a judgment of the State of Tennessee against Mrs. Arms entitled to Full Faith and Credit in the State of Tennessee.

8. On June 16, 2008, Mrs. Arms executed a Quit Claim Deed ("Quit Claim Deed"), which purported to transfer the Realty from Mrs. Arms, individually, to Mr. and Mrs. Arms as tenants by the entireties.

9. On July 14, 2008, which was the eve of the hearing on Plaintiff's motion for summary judgment, Mr. Arms recorded the Quit Claim Deed with the Register of Deeds for Cocke County, Tennessee.

10. On July 15, 2008, the Chancery Court orally granted summary judgment to Plaintiff. Subsequently, on August 5, 2008, the Chancery Court entered an Order enrolling and domesticating the New York Judgment against Mrs. Arms as a judgment of the State of Tennessee ("Judgment") in the principal amount of $86,190.12 (including accrued post-judgment interest in the amount of $4,834.53 at the rate of 9% *per annum* under N.Y. C.P.L.R. § 5004 from and after November 17, 2007, through and until July 15, 2008), plus post-judgment interest that continues to accrue under Tennessee law at the rate 10% *per annum* from and after July 15, 2008.

11. On September 16, 2008, Plaintiff recorded a judgment lien against the Realty in the Register's Office for Cocke County, Tennessee.

12. On September 19, 2008, Plaintiff filed a motion for an order of sale of realty, pursuant to Rule 69.07(3) of the Tennessee Rules of Civil Procedure. That motion was granted from the bench by the Chancery Court on December 12, 2008. Plaintiff agreed to prepare a proposed order, and in doing so, discovered the purported transfer of the Realty from Mrs. Arms individually to Mr. and Mrs. Arms as tenants by the entireties (the "Transfer").

13. Mrs. Arms transferred the Realty from herself, individually, to herself and Mr. Arms as tenants by the entireties, in order to prevent any possibility that they might lose the Realty to Plaintiff in an execution sale on its Judgment, and not for any other reason.

14. Mrs. Arms did not receive any value from Mr. Arms or anyone on his behalf in exchange for the Transfer. She did not and does not owe him any debts; Mr. Arms has not loaned any money to her, and Mr. Arms did not provide any value for the transfer. Mr. Arms pays all household expenses, including all groceries, utilities, and other necessities for Mrs. Arms and himself, but Mr. Arms has not provided her with any tangible or intangible property other than these necessities. Neither Mrs. Arms nor Mr. Arms consider his providing these necessities as creating any indebtedness by her to him.

15. Mrs. Arms has lived at the residence located on the Realty, together with Mr. Arms, for over 30 years. Mr. and Mrs. Arms have been married during this entire period. Mrs. Arms retained possession and control of the Realty after the Transfer.

16. Mrs. Arms concealed the Transfer. She did not disclose the Transfer to Plaintiff at

4

any time before Plaintiff discovered it in its own diligence while conducting a title search after the Chancery Court granted Plaintiff's motion for an order of sale of realty on December 12, 2008. Mrs. Arms told only family about the Transfer.

17. The Realty was substantially all of Mrs. Arms' assets. Besides the Realty, Mrs. Arms owns only clothes, furniture, and a little bit of jewelry.

18. Excluding the Realty, Mrs. Arms' debts exceed her assets. Mrs. Arms (a) has not worked in 15 years, long before the Transfer; (b) has no assets other than some clothes, furniture, and a little jewelry; (c) receives food stamps each month and will begin receiving disability soon; (d) receives assistance from Mr. Arms for necessities; (e) was overdrawn on her only bank account before the Transfer and has no money in a bank presently; (f) had unpaid creditors (including credit cards and medical expenses) before the Transfer and has unpaid creditors presently; and (g) considered filing a bankruptcy petition prior to and following the Transfer.

## II. CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds $75,000, and citizenship is diverse.

2. This Court has personal jurisdiction over Mr. and Mrs. Arms and venue is proper.

3. A transfer of real property from a debtor individually to herself and her spouse as tenants by the entireties "may be avoidable" as to a creditor if fraudulently made because such a transfer "greatly reduces the value of the property as a source for payment of her debts." *In re Silvey*, 378 B.R. 186, 189 (Bankr. E.D. Tenn. 2007).

4. At the time of the Transfer, Plaintiff was a present judgment creditor of Mrs. Arms. The New York Judgment was owed by Mrs. Arms and unpaid at the time of the Transfer. Tenn. Code. Ann. § 66-3-302 (defining a creditor as "a person who has a claim" and a claim as "a right to payment, whether or not the right is reduced to judgment . . . ."). *See also* Tenn. Code Ann. §§ 66-3-305 and -306 (distinguishing between "present" creditors--i.e., those whose claims "arose before the transfer was made"--and "future" creditors--i.e., those whose claims "arose . . . after the transfer was made."

5. The Transfer was fraudulent as to Plaintiff under Tenn. Code Ann. § 66-3-305(a)(1). The Transfer was made "[w]ith actual intent to hinder, delay, or defraud" Plaintiff in the collection of its debt because Mrs. Arms made the Transfer to avoid an execution sale on the Realty and for no other reason. In addition, Tenn. Code Ann. § 66-3-305(b) provides several factors to consider in determining actual intent, to wit:

   a. "The transfer . . . was to an insider . . . ." *Id.* This factor supports a finding of actual fraudulent intent because Mrs. Arms conveyed the property to herself and her husband. *See* Tenn. Code. Ann. § 66-3-302(7)(A)(i) (defining "insider" to include "[a] relative of the debtor").

   b. "The debtor retained possession or control of the property transferred after the transfer . . . ." Tenn. Code. Ann. § 66-3-305(b). This factor supports a finding of actual fraudulent intent.

   c. "The transfer . . . was disclosed or concealed . . . ." *Id.* This factor supports

6

a finding of actual fraudulent intent.

d. "Before the transfer was made . . . , the debtor had been sued or threatened with suit . . . ." *Id.* This factor supports a finding of actual fraudulent intent.

e. "The transfer was of substantially all the debtor's assets . . . ." *Id.* This factor supports a finding of actual fraudulent intent.

f. "The debtor absconded . . . ." *Id.* This factor does not support a finding of actual fraudulent intent.

g. "The debtor removed or concealed assets . . . ." *Id.* This factor is not relevant here, because Mrs. Arms had no substantial assets other than the Realty to remove or conceal.

h. "The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ." *Id.* This factor supports a finding of actual fraudulent intent because Mrs. Arms received no value for the Transfer.

i. "The debtor was insolvent or became insolvent shortly after the Transfer was made or the obligation was incurred . . . ." *Id.* This factor supports a finding of actual fraudulent intent because, excluding the Realty, which is valued at $125,000, Mrs. Arms' debts exceed her assets. *See* Tenn. Code Ann. § 66-3-303 (defining insolvency as debts in excess of assets, and creating a presumption of insolvency where the debtor is generally not paying her debts as they become due).

j. "The transfer occurred shortly before or shortly after a substantial debt was

7

incurred . . . ." Tenn. Code Ann. § 66-3-305(b). Although Mrs. Arms' indebtedness to Plaintiff existed for some time before the Transfer was made, this factor nonetheless supports a finding of actual fraudulent intent because the Transfer occurred on July 14, 2007, on the eve of the order domesticating the New York Judgment against Mrs. Arms. *See* Tenn. Code Ann. §§ 66-3-307 (providing that a transfer occurs "when the transfer is so far perfected that a [subsequent] good-faith purchaser . . . cannot acquire an interest . . . superior to the interest of the transferee."); 66-26-105 (providing that a deed first recorded "shall have preference over one of earlier date . . . unless it is proved in a court of equity . . . that the [subsequent purchaser] had full notice of the previous instrument.")

  k. "The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor . . . ." Tenn. Code Ann. § 66-3-305(b). This factor is not relevant because the Transfer did not involve business assets.

6. The Transfer was fraudulent as to Plaintiff under Tenn. Code Ann. § 66-3-305(a)(2) because Mrs. Arms did not receive a reasonably equivalent value for the Realty and believed, or reasonably should have believed, that her debts would be beyond her ability to pay after the Transfer (given her lack of other assets).

7. The Transfer was fraudulent as to Plaintiff under Tenn. Code Ann. § 66-3-306 because Mrs. Arms did not receive a reasonably equivalent value for the Realty and either was insolvent or became insolvent as a result of the Transfer.

8

8. A fraudulent transfer may be set aside in order to satisfy a creditor's claim. Tenn. Code Ann. §§ 29-12-101 ("Any creditor . . . may file the bill in chancery . . . to set aside fraudulent conveyances of property, . . . and subject the property, by sale or otherwise, to the satisfaction of the debt."); 66-3-101 ("Every . . . conveyance of lands . . . had or made and contrived of . . . fraud . . . to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful . . . debts, shall be deemed and taken, only as against the person . . . whose debts . . . shall or might be . . . defrauded, to be clearly and utterly void . . . ."); 66-3-308 ("In an action for relief against a transfer or obligation under this part, a creditor . . . may obtain . . . [a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim . . . .").

## III. CONCLUSION

For the foregoing reasons, the Court will enter judgment for Plaintiff.

An Order shall enter.

                                             s/*Susan K. Lee*
                                             SUSAN K. LEE
                                             UNITED STATES MAGISTRATE JUDGE

9

Case 2:09-cv-00088-SKL   Document 23   Filed 12/24/09   Page 9 of 9   PageID #: 217